**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANNE GIFFORD<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF JERSEY CITY, et al<br><br>  Defendants. | Civil Action No. 18-5422 (ES) (SCM)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant City of Jersey City's ("Defendant" or the "City") motion to dismiss Plaintiff Joanne Gifford's ("Plaintiff") Complaint. (D.E. No. 6). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1367. Having considered the parties' submissions,[1] the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the Court DENIES Defendant's motion to dismiss.

**I.    Background[2]**

Plaintiff owns a single-family home (the "Property") located in the City within the Journal Square 2060 Redevelopment Plan. (Compl. ¶ 10). Plaintiff suffered a "severe traumatic injury to her left foot and ankle in 1993," which has worsened over the past 25 years. (*Id.* ¶ 6). The injury caused the "destruction of her muscles, nerves, and tendons," and a result, she has "very restricted[,] painful and unsafe walking ability. . . ." (*Id.*). As a result, she "cannot adequately

---

[1]    (D.E. No. 1 ("Compl."); D.E. No. 6-1 ("Def.'s Mov. Br."); D.E. No. 9 ("Pl.'s Opp. Br."); D.E. No. 10 ("Def.'s Reply Br.")).

[2]    The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

perform major life activities including walking, standing, bending and lifting," suffers from a "permanent unstable limp," and "walks with intense pain." (Compl., Ex. A at 16[3]).

Plaintiff alleges that "[a]pproximately eighty (80%) percent of the homes on the Plaintiff's residential block have off-street parking in their front yards." (Compl. ¶ 12). She asserts that the size of her Property fits the requirements to accommodate a vehicle. (*Id.* ¶ 38). On or about August 2014, Plaintiff made a request to the City Planning Board seeking permission to put a driveway curb cut to construct a carport in the front yard of the Property. (*Id.* ¶ 13). Defendant advised Plaintiff that such curb cuts are not permitted under the Redevelopment Plan and that she should apply for a handicap parking spot in the front of the Property. (*Id.* ¶¶ 13 & 16).

In September 2014, via letter, Plaintiff requested a reasonable accommodation from Defendant and advised that the recommended handicap parking spot would not be a reasonable accommodation. (*Id.* ¶ 19). By letter dated September 15, 2014, Defendant advised Plaintiff to file an application with the Zoning Board of Adjustment to receive a deviation of the Redevelopment Plan. (*Id.* ¶ 20).

On or about December 2016, Plaintiff's counsel filed an application for a Use Variance seeking permission to construct her desired carport. (*Id.* ¶ 22). In response, Defendant informally advised that such construction would not be permitted under the Redevelopment Plan and that Defendant would oppose any such variance. (*See id.* ¶ 23).

On January 4, 2017, Plaintiff again requested a reasonable accommodation from Defendant to construct the carport. (*Id.* ¶ 24). She again explained that the proposed on-street handicap parking spot "would be farther than she could tolerate without undue pain and hardship." (*Id.* ¶ 25). She alleges that this on-street parking spot is also obstructed by a bicycle lane and would also

---

[3] Pincites to Complaint's page number refer to the pagination generated by CM/ECF on the upper righthand corner.

be unavailable for use on designated street cleaning dates. (*Id.*).

Plaintiff initiated the instant suit against Defendant on April 4, 2018. (Compl.). Plaintiff asserts four claims: Count I – intentional discrimination in violation of the Fair Housing Amendments Act ("FHAA"); Count II – discrimination in violation of the Americans with Disabilities Act ("ADA"); Count III – discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); Count IV – violation of the New Jersey Municipal Land Use Law ("MLUL"). (Compl. ¶¶ 26-53). In connection with these causes of action, Plaintiff is requesting declaratory and injunctive relief, compensatory and punitive damages, costs, and reasonable attorney's fees. (*See generally id.*).

## II. Legal Standard

### A. Rule 12(b)(1)

"A motion to dismiss for lack of ripeness is properly brought pursuant to Rule 12(b)(1)." *Abraxis Bioscience, Inc. v. Navinta LLC*, No. 07-1251, 2008 WL 2967034, at *2 (D.N.J. July 31, 2008) (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)); *see also Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481, 488 n.9 (3d Cir. 2017) (noting that challenges based on ripeness and standing dispute the court's subject matter jurisdiction). A party bringing a motion under Rule 12(b)(1) may assert either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In a facial attack, the movant "challenges subject matter jurisdiction without disputing the facts alleged in the complaint." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "When such a motion is brought, the court must accept as true all material allegations of the complaint and construe that complaint in favor of the nonmoving party." *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000) (citing *Warth v. Seldin*, 422

U.S. 490, 501 (1975)).

On the other hand, in a factual attack, the movant "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise present[ing] competing facts." *Davis*, 824 F.3d at 346 (internal quotations omitted) (internal alterations in original). "[A] factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

### B.     Rule 12(b)(6)

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic

4

documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citations omitted); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (cleaned up)).

## III. Discussion[4]

### A. Ripeness

#### i. The Parties' Arguments

Defendant argues that Plaintiff's claims are not yet ripe because she has failed to "fil[e] any initial application with the Jersey City Planning Division or the Jersey City Zoning Division." (Def.'s Mov. Br. at 16). Defendant further asserts that Plaintiff has only engaged in "informal interactions" with Defendant's representatives in an "attempt[] to avoid the entire [zoning and planning permit] procedural process" in a manner that "is not countenanced by the FHAA and the ADA." (*Id.* at 15-16). Additionally, Defendant argues that Plaintiff will suffer no hardship if the Court were to withhold consideration because it has provided her with a reasonable

---

[4] At the onset, the Court notes that Defendant's Preliminary Statement and brief headings seek dismissal of all claims, but Defendant fails to properly brief all of the asserted issues. For instance, the heading for Defendant's statute of limitation argument mentions that the FHAA, ADA, NJLAD, and MLUL claims are time barred. (Def.'s Mov. Br. at 8). However, Defendant only briefs the statute of limitations issue as to the FHAA, ADA, and NJLAD, providing no argument or law explaining the statute of limitations for MLUL. (*See id.* at 8-10 (concluding that "Therefore, Plaintiff's claims under the FHA, ADA and NJLAD are time-barred")). Similarly, Defendant's Preliminary Statement asserts that all four claims must also be dismissed because Plaintiff has failed to properly plead a claim under the FHAA, ADA, NJLAD, and MLUL. (*See* Def.'s Mov. Br. at 4). However, Defendant briefs the defective pleading issue as to the FHAA and ADA claims only. (*See id.* at 17-27).

The Court reminds Defendant that it is not the District Court's job to make the parties' arguments for them. *See Green v. 712 Broadway, LLC*, No. 17-0991, 2018 WL 2754075, at *7 (D.N.J. June 8, 2018) (citing *Lee v. Park*, 720 F. App'x 663, 666 (3d Cir. 2017)); *Davis*, 824 F.3d at 349 ("When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim."). Accordingly, for purposes of deciding the instant motion the Court will consider only the issues and arguments that have been properly briefed by the parties.

accommodation which, while not her exact preference, affords her the "equal opportunity for access to and from her home." (Def.'s Reply. Br. at 3-4).

Plaintiff asserts that her prior counsel did file a variance application on her behalf and that Defendant's failure to properly consider it "is tantamount to a formal denial." (Pl.'s Opp. Br. at 10 & 12-13).[5] She also claims that she will continue to endure hardship without judicial consideration because her application will continue to be ignored or denied, and she will incur unnecessary expenses. (*Id.* at 14-15).

### ii. Analysis

"[T]he question of ripeness is generally viewed as a question of law." *Felmeister v. Office of Att'y Ethics*, 856 F.2d 529, 535 n.8 (3d Cir. 1988). Ripeness addresses "*when* in time is it appropriate for a court to take up the asserted claim." *Id.* at 535 (quoting *Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (internal citations omitted). The "two-step test for determining ripeness . . . looks at: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* at 434 (citations and internal quotation marks omitted).

"In the context of land use disputes, the Supreme Court has imposed specific ripeness requirements." *Smith v. Twp. of Union*, No. 05-2080, 2005 WL 1607012, at *2 (D.N.J. July 7, 2005) (citing *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005)). Among

---

[5] Plaintiff also argues that the legal issues are fit for judicial decision because Defendant's position on her application is sufficiently certain, and requiring her to "work within [Defendant's] administrative process would be an exercise in futility." (Pl.'s Opp. Br. at 13). Because the Court finds that her primary argument is sufficient to survive the instant motion, the Court takes no position on this alternative argument.

them is the requirement that "[a] landowner must submit 'at least one meaningful application for a variance.'" *Id.* (quoting *Murphy*, 402 F.3d at 348). This serves the proposition that "a property owner does not have a ripe constitutional claim until the zoning authorities have had an opportunity to arrive [ ] at a final, definitive position regarding how [they] will apply the regulations at issue to the particular land in question." *Congregation Anshei Roosevelt v. Planning and Zoning Bd.*, No. 07-4109, 2008 WL 4003483, at *10 (D.N.J. Aug. 21, 2008) (citations and internal quotation marks omitted) (alterations in original). The variance application requirement serves four distinct interests: (1) it assists in developing a full record; (2) it allows the court to know "exactly how a regulation will be applied to the land in question;" (3) it potentially allows the landowner to acquire the relief she seeks without judicial entanglement; and (4) "it reinforces the principles of federalism." *Smith*, 2005 WL 1607012, at *2. However, "[l]itigants are not required to make . . . futile gestures to establish ripeness." *Sammon v. N.J. Bd. of Med. Examiners*, 66 F.3d 639, 643 (3d Cir. 1995); *Congregation Anshei*, 2008 WL 4003483, at *11 ("A property owner [may] be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." (quoting *Murphy*, 402 F.3d at 348)). This principle "has been applied in numerous zoning and non-zoning cases to establish the necessary certainty and finality that the 'fitness prong' . . . requires." *Assisted Living Assocs. of Moorestown L.L.C. v. Moorestown Twp.*, 996 F. Supp. 409, 426-27 (D.N.J. 1998) (collecting cases).

As to the first prong for determining ripeness, the Court concludes that the issues here are fit for judicial decision. Plaintiff alleges she filed a variance application in December 2016. (*See* Compl. ¶¶ 22 & 23). Plaintiff asserts that she also filed a request for a waiver of the $5,000 application fee to amend the Redevelopment Plan. (Pl.'s Opp. Br. at 13). While Defendant did not formally deny Plaintiff's requests, Defendant apparently has not considered the application in

7

the approximate 16 months between their submission and the filing of the instant matter. (*See* Compl. ¶ 23; Pl.'s Opp. Br. at 10). Rather, Defendant posits that it did not receive a formal variance application or a request for a fee waiver. (Def.'s Reply Br. at 2-3). But Defendant provides nothing to support this argument, and in the absence of a factual attack supported by extrinsic evidence, the Court must take Plaintiff' allegations that she did file an appropriate application in December 2016 as true.[6] *See Davis*, 824 F.3d at 346. As alleged by the Complaint, then, Plaintiff submitted a meaningful application which Defendant has effectively denied. *See Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017) ("An undue delay in granting a reasonable accommodation may amount to a refusal."); *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) ("The failure to make a timely determination after meaningful review amounts to constructive denial of a requested accommodation, as an indeterminate delay has the same effect as an outright denial." (citations and internal quotation marks omitted)); *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) ("[A]n indeterminate delay [in considering an application for reasonable accommodation] has the same effect as an outright denial."). Therefore, drawing all reasonable inferences in favor of Plaintiff, the Complaint indicates that Plaintiff has tried to acquire a formal decision on her variance 2016 application, and that Defendant has refused to formally consider her application. Consequently, the issues are fit for judicial decision for purposes of the instant motion. *See, e.g.*, *Assisted Living Assocs.*, 996 F. Supp. at 427-48.

As to the second prong, the hardship to the parties, the Court concludes that Plaintiff will

---

[6] Defendant appears to argue that Plaintiff's counsel only submitted email inquiries in December 2016. (Def.'s Reply. Br at 9-10). But Plaintiff asserts, and her Complaint specifically alleges, that in December 2016 her counsel also filed an "application for Use Variance to permit the carport." (*See* Compl. ¶ 22; Pl.'s Opp. Br. at 4-5). Aside from insisting that it has no record of such an application being filed, Defendant provides no extrinsic evidence—not even an affidavit from a relevant City employee attesting that no such application was ever filed—to contradict Plaintiff's allegations. (*See* generally D.E. Nos. 6 & 10). Therefore, the Court must take Plaintiff's allegations as true. *See Davis*, 824 F.3d at 346.

8

endure an immediate and significant hardship without judicial consideration. The hardship factor turns on whether the impact of the agency's actions is "'immediate and significant.'" *McKay Bros., LLC v. Zoning Bd. of Adjustment*, No. 13-1383, 2013 WL 1621360, at *4 (D.N.J. Apr. 12, 2013) (quoting *Felmeister*, 856 F.2d at 537). For instance, in *Associated Living* the district court concluded that the plaintiffs would endure hardship because requiring them to pursue a "feckless variance application [would be] remarkably unlikely to shed light on whether the accommodation requested [would be] reasonable or necessary," and plaintiffs would be forced to "continue to expend funds." *Assisted Living Assocs.*, 996 F. Supp. at 428.

Here, as in *Assisted Living*, sending Plaintiff back to the administrative process would likely disserve the interests of all the parties. In light of the alleged factual history between the two parties, it is highly likely that the parties will return to the Court in substantially the same positions but after forcing Plaintiff to undergo considerable additional expenditure of funds and an unnecessary delay. *See id*. Additionally, Plaintiff alleges, and her doctor opines, that any amount of walking is extremely painful and that a restricted on-street parking spot near her home "would be farther than she could tolerate without undue pain and hardship." (Compl. ¶¶ 6, 25 & Ex. A; Pl.'s Opp. Br. at 14). Thus, Plaintiff suffers from an immediate, concrete, and significant legal hardship today, and any delay will only increase that hardship. *See Assisted Living Assocs.*, 996 F. Supp. at 427 ("Numerous courts have stressed that housing discrimination causes a uniquely immediate injury.").

Defendant argues that Plaintiff will not suffer hardship because Defendant has provided her with an "alternative reasonable accommodation." (Def.'s Reply. Br. at 3). Placing aside that this argument presumes, without any basis, that Defendant's proposed alternative accommodation provides Plaintiff with an equal opportunity to use and enjoy her home, *see Vorchheimer v.*

9

*Philadelphia Owners Association*, 903 F.3d 100, 109 (3d Cir. 2018), the argument simply conflates the ripeness inquiry with the merits of Plaintiff's claim. The hardship inquiry focuses on whether the actions of Defendant create "adverse effects of a strictly legal kind" on Plaintiff. *N.J. Hosp. Ass'n v. United States*, 23 F. Supp. 2d 497, 502 (D.N.J. 1998) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)). As described above, Defendant's apparent denial of Plaintiff's request adversely affects her right to enjoy her property. By contrast, the proposed alternative accommodation is relevant for determining the second element of a FHAA claim: whether the requested accommodation is necessary. *Vorchheimer*, 903 F.3d at 109 (noting that this can be a fact-intensive inquiry). Thus, to apply Defendant's logic would mean requiring every plaintiff to demonstrate that he has a winning FHAA claim before he even steps into the courtroom, an absurd proposition. *See Martin v. Town of Simsbury*, 735 F. App'x 750, 752 (2d Cir. 2018).

In short, the Court holds that the instant controversy is fit for judicial resolution and that Plaintiff would suffer hardship absent judicial consideration. Therefore, the controversy is ripe. *See, e.g.*, *Assisted Living Assocs.*, 996 F. Supp. at 425-28.

> **B.** **Statute of Limitations**[7]
>
> > **i.** **The Parties' Arguments**

Defendant next argues that Plaintiff's claims are untimely under the applicable statutes of limitations. (Def.'s Mov. Br. at 8-11). Defendant argues that, in the absence of a statutorily prescribed statute of limitations, the statute applicable to personal injury actions, two years in New Jersey, should apply. (*Id.* at 8). Defendant avers that Plaintiff's claims accrued, "at the very latest," in 2014 and that she is unable to "identify any violations occurring within the applicable

---

[7] The Court notes that Defendant does not argue this point as an alternative. (*See* Def.'s Mov. Br.) Thus, Defendant presents two clearly inconsistent positions: As a general rule, an unripe controversy has not yet accrued, while the limitations period begins to run only after accrual. *See Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Ca.*, 522 U.S. 192, 195 (1997); *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016).

two-year statute of limitations." (*See id.* at 10; Def.'s Reply Br. at 5). Therefore, Defendant argues that Plaintiff's claims under the FHAA, the ADA, and the NJLAD are barred by the applicable two-year statute of limitations. (Def.'s Mov. Br. at 10; Def.'s Reply Br. at 7).

Plaintiff concedes that her FHAA, ADA, and NJLAD claims are subject to a two-year statute of limitations. (Pl.'s Opp. Br. at 16). Moreover, she seemingly concedes that any theoretical claims she may have had from 2014 are time-barred. (*See id.* at 16-17). Instead, Plaintiff argues that "[h]er claims under all three statutes accrued sometime after the submission of the December 2016 variance application." (*Id.* at 16). Defendant's failure to formally consider her application, she argues, "became the legal equivalent of a denial, causing her claims to accrue." (*Id.* at 17).

### ii. Analysis

"A defendant may prevail on the statute of limitations at the motion to dismiss stage 'if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Kreimer v. Nat'l R.R. Passenger Corp.*, No. 11-3453, 2011 WL 4906631, at *1 (D.N.J. Oct. 13, 2011) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)). "Since the text of the ADA does not contain a statute of limitations, the [state] limitations period for personal injury actions must be applied to ADA claims." *hip (Heightened Indep. & Progress), Inc. v. Port Auth. of N.Y. & N.J.*, No. 07-2982, 2008 WL 852445, at *2 (D.N.J. Mar. 28, 2008). "New Jersey law requires actions for personal injuries to be filed within two years after the claim accrues." *See id.* at *2-3 (citing *N.J.S.A.* § 2A:14-2(a)). Similarly, New Jersey courts have applied the same two-year limitation's period to NJLAD claims. *Montells v. Haynes*, 627 A.2d 654, 655 (N.J. 1993) (concluding two-year statute of limitations of N.J.S.A. 2A:14–2(a) applies to NJLAD claims). Moreover, the FHAA contains an express two-year limitations period.

42 U.S.C. § 3613(a)(1)(A). Therefore, Plaintiff's FHAA, ADA, and NJLAD claims are all subject to a two-years statute of limitations.

Generally, "the statute of limitations begins to run as soon as a right to institute and maintain suit arises." *Burkhart v. Widener Univ., Inc.*, 70 F. App'x. 52, 53 (3d Cir. 2003). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which [her] action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)). "In a discrimination case, the focus is on when the discriminatory act occurs not when the consequences of that act become painful." *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003). Regarding Plaintiff's NJLAD claims, the applicable statute of limitations "accrue[s] when the discriminatory decision causes damage." *See Mack v. Town of Morristown*, No. 15-2946, 2017 WL 2268320, at *5-6 (D.N.J. May 24, 2017).

Here, the basis for Plaintiff's claims stems from the alleged "delay . . . if not outright refusal to formally consider" her December 2016 variance application. (Pl.'s Opp. Br. at 16-17). This contradicts Defendant's argument that Plaintiff's claims accrued in 2014. *See Groome Res. Ltd.*, 234 F.3d at 199 ("[A]n indeterminate delay [in considering an application for reasonable accommodation] has the same effect as an outright denial."). While Defendant asserts that it never received a variance application in December 2016, Plaintiff has properly alleged that fact in her Complaint. (*See* Compl. ¶ 22). At the motion to dismiss stage the Court must accept as true the factual allegations properly made in the Complaint and must give Plaintiff the benefit of all favorable inferences drawn therefrom. *See Malleus*, 641 F.3d at 563. Thus, Plaintiff has asserted that the allegedly wrongful act occurred during or after December 2016, which is less than two years from the April 4, 2018 filing date of the Complaint. Therefore, for purposes of the instant

motion, Plaintiff' has sufficiently alleged facts to show that her claims are not barred by the applicable statute of limitations.[8]

### C. Discrimination in Violation of the FHAA & ADA[9]

#### i. The Parties' Arguments

Defendant argues that it extended a reasonable accommodation to Plaintiff in the form of advising her to apply for a handicapped parking spot which would be directly in front of her home. (Def.'s Mov. Br. at 23-25). Therefore, Defendant argues that Plaintiff's FHAA and ADA claims must be dismissed for failure to plead sufficient facts to state a claim against Defendant. (*Id.* at 7).[10]

Plaintiff counters that her requested accommodation of off-street parking in her front yard is "necessary to afford her an equal opportunity to use and enjoy her home," in light of her recorded handicap. (Pl.'s Opp. Br. at 19-20). Moreover, she argues that Defendant cannot meet its burden of showing that her reasonable accommodation is unreasonable because Defendant is unable to demonstrate that granting the accommodation would cause an undue burden or hardship on Defendant or would require a fundamental alteration to the Defendant's zoning scheme. (*Id.* at

---

[8] To be sure, the Court's holding today as to Defendant's ripeness and statute of limitations arguments is constrained by the allegations in the Complaint and documents attached to or referenced by the Complaint. *See Mayer*, 605 F.3d at 230. "Inasmuch as Defendant[ ] may wish to reassert these arguments more fully after discovery is completed and the facts more fully ascertained, the motion is denied without prejudice." *See, e.g.*, *Gerlach v. Snee*, No. 06-0881, 2007 WL 1488773, at *3 (D.N.J. May 18, 2007).

[9] Both parties acknowledge that "[t]he analysis under the ADA is very similar to that under the FHAA" and rely on their FHAA analyses in support of their ADA arguments. (*See* Def.'s Mov. Br. at 26-27; Pl.'s Opp. Br. at 25). The Court will proceed similarly. *See Lapid Ventures, LLC v. Twp. of Piscataway*, No. 10-6219, 2011 WL 2429314, at *5 (D.N.J. June 13, 2011) ("Since the requirements of the FHAA [and ADA] are essentially the same, courts have concluded that the FHAA analysis can be applied to ADA . . . claims as well. . . ."); *Sharpvisions, Inc. v. Borough of Plum*, 475 F. Supp. 2d 514, 521 n.2 (W.D. Pa. 2007) (concluding that the legal analysis of an FHA claim was applicable to ADA claims).

[10] Defendant also argues that Plaintiff cannot make a sufficient case for intentional discrimination because Defendant did not act with any discriminatory purpose in denying Plaintiff's request. (Def.'s Mov. Br. at 21-23). Plaintiff does not respond to this argument and appears to only assert a reasonable accommodation claim. (*See* Pl's Opp. Br. at 17-25).

22-23). Finally, Plaintiff argues that Defendant's suggestion that she apply for a reserved handicapped spot is not a reasonable accommodation because it would cause her intolerable pain and would render her unable to control possibly dangerous conditions in the street. (*Id.* at 23-24).

### ii. Analysis

Congress passed the FHAA in 1988 to extend the protections of the Fair Housing Act ("FHA"), prohibiting housing discrimination on the basis of race, gender, and national origin, to include individuals with disabilities. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). "[T]he enactment of the FHAA was a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1105 (3d Cir. 1996) (internal quotation marks omitted). As the Third Circuit Court of Appeals has explained,

> Plaintiffs may bring three different types of claims against municipal land use authorities under the FHAA: (1) intentional discrimination claims (also called disparate treatment claims); (2) disparate impact claims; and (3) claims that the municipal authority failed to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s an] equal opportunity to use and enjoy a dwelling."

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 448 n.3 (3d Cir. 2002) (quoting 42 U.S.C. § 3604(f)(3)(B)).

When analyzing a claim under the reasonable accommodations provision of the FHAA, the Court must focus on three factors: "whether the requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Id.* at 457. Under the reasonable accommodations provision, "the initial burden is on the plaintiff to demonstrate that the accommodations that [she] requested are necessary to afford [her an] equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show

14

that the requested accommodations are unreasonable." *Id.* at 459 (internal quotation marks omitted). "The reasonable accommodation inquiry is highly fact-specific, requiring a case-by-case determination." *Hovsons*, 89 F.3d at 1104 (quoting *Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994)). However, "[t]o survive a motion to dismiss, a plaintiff need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity." *Vorchheimer*, 903 F.3d at 111.

"[I]n order to show that a requested accommodation is necessary plaintiff[] must show that, but for the accommodation, [she] likely will be denied an equal opportunity to enjoy the housing of [her] choice." *Lapid-Laurel*, 284 F.3d at 460 (internal quotation marks omitted). "[T]he [FHAA's] necessity element requires that an accommodation be essential, not just preferable." *Vorchheimer*, 903 F.3d at 107. "Gauging necessity [also] requires considering whether an alternative on offer satisfies the goal of equal housing opportunity. . . ." *Id.* at 108. The proposed alternative must afford the handicapped individual the "equal opportunity both to use and enjoy her home." *Id.* at 109. Therefore, necessity "may require more than just those accommodations that are absolutely necessary for the disabled individual's treatment or basic ability to function." *Id.* (noting that this can be a fact-intensive inquiry) (internal quotation marks omitted).

Once the burden shifts to the defendant to show that the accommodation is not reasonable, the defendant is "required to prove that it c[an] not . . . grant[ ] the variance without imposing undue financial and administrative burdens, imposing an undue hardship upon the Township, or requiring a fundamental alteration in the nature of the program." *Hovsons*, 89 F.3d at 1104 (citations and internal quotation marks omitted). "While the obligation does not require a substantial or fundamental alteration in the nature of a program, it may require a reasonable modification." *Assisted Living Assocs.*, 996 F. Supp. at 435 (citations and internal quotation marks

15

omitted). "[S]atisfaction of the FHAA's reasonable accommodation requirement can and often will involve some costs." *Hovsons*, 89 F.3d at 1104 (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 335 (2d Cir. 1995)).

Here, Plaintiff has sufficiently alleged a claim under the reasonable accommodations provision of the FHAA.[11] Plaintiff alleges that "the City fail[ed] to make [a] reasonable accommodation . . . by [not] granting the requested carport or exemption from the Plan." (*See* Compl. ¶ 27). She claims that "[a]s a result of [such] actions, Plaintiff is unable to fully enjoy the intended use of her dwelling." (*Id.* ¶ 32). Moreover, her physician notes that the requested accommodation "is medically necessary as it will permit [Plaintiff] to travel . . . without delay and without severe pain that she currently experiences." (*Id.*, Ex. A at 17). These allegations are sufficient to construct a plausible FHAA claim upon which relief can be granted. *See, e.g.*, *Schoenstein v. Constable*, No. 13-6803, 2014 WL 6685409, at *11 (D.N.J. Nov. 26, 2014).

Defendant argues that it has offered Plaintiff an alternative in the form of a reserved handicapped parking space in front of her house. (Def.'s Mov. Br. at 23-26). While an offer of alternative accommodation is relevant to the necessity inquiry, a determination of whether such an alternative will afford an individual equal housing opportunity "depends on that particular [individual's] abilities and disability, which may require a fact-intensive inquiry." *Vorchheimer*, 903 F.3d at 109. This Court is not best positioned at the motion to dismiss stage to evaluate whether Defendant's proposed alternative will allow Plaintiff an equal enjoyment of her home.

Moreover, Defendant has not made a persuasive argument to show that the requested accommodation is unreasonable. In its Reply, Defendant notes that "Plaintiff was advised . . . of the dilemmas and hardships faced by the City, pedestrians, residents and businesses with granting

---

[11] For purposes of a motion to dismiss, the Court assumes, and Defendant does not dispute that, Plaintiff's physical condition qualifies as a handicap under the FHAA. *See* 42 U.S.C. § 3602(h)(1); *see also* (Compl. ¶¶ 5-7).

16

curb cuts in the Journal Square area." (Def.'s Reply Br. at 10). But that Plaintiff was "advised" of these alleged hardships does not mean that Defendant has met its burden of showing that the requested accommodation will impose "undue financial and administrative burdens, imposing an undue hardship upon the Township, or requiring a fundamental alteration in the nature of the program." *Hovsons*, 89 F.3d at 1104 (citations and internal quotation marks omitted). Plaintiff asserts she would cover "virtually all of the construction costs associated with placing off-street parking in her front yard, as that is the norm." (Pl's Opp. Br. at 23). And because approximately 80 percent of the homes in Plaintiff's residential block have off-street parking in their front yard (Compl. ¶ 12), it can be inferred that the requested accommodation will not fundamentally alter the nature of the plan. Thus, at least for purposes of the present motion, Defendant has not sufficiently demonstrated that the requested accommodation is unreasonable.

Therefore, the Court holds that Plaintiff has sufficiently stated a claim upon which relief may be granted under the FHAA.[12]

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED. An appropriate order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[12] Similarly, the Plaintiff has sufficiently stated a claim upon which relief may be granted under the ADA. *See, e.g.*, *Schoenstein*, 2014 WL 6685409, at *9 & *11.